UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-81163-CIV-MATTHEWMAN

JEFFREY LAGRASSO and
DEBORAH LAGRASSO,

    Plaintiffs,

vs.

SEVEN BRIDGES HOMEOWNERS
ASSOCIATION, INC.,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE [DE 116]

THIS CAUSE is before the Court upon Defendant's Motion *in Limine* ("Motion"). [DE 116]. Plaintiffs failed to timely respond to the Motion. During the July 14, 2021 status conference, the Court heard from counsel and, in the interests of justice, granted Plaintiffs leave to file a response over Defendant's objection. [DE 199]. Thereafter, Plaintiffs responded [DE 201], and Defendant replied [DE 205]. Having carefully reviewed the parties' filings, the entire record, and the governing law, the Motion [DE 116] is **GRANTED IN PART and DENIED IN PART,** for the reasons that follow.

This case is set for a jury trial before the undersigned on April 18, 2022. [DE 208]. The jury will determine Plaintiffs' disparate treatment discrimination theory of Count I. [DE 188]. Specifically, the jury will determine if Defendant discriminated against Plaintiffs in part due to their status as Christians, or at least as non-Jewish community members. *Id.* This is the only remaining claim in this case.

In the instant Motion [DE 116], Defendant seeks to exclude evidence and argument regarding: (1) the November 22, 2019 tennis court incident and the Association's handling of it; (2) Deborah LaGrasso's Facebook posts and the Association's actions against her; (3) the termination and grounds therefore of the Pro Shop Manager, Leah Nagel; (4) the September 6, 2019 Association Fining Schedule; (5) alleged fraud in the Association's December 2020 Board of Directors election; (6) audio or video evidence produced by the Plaintiffs after July 8, 2020; and (7) *Palm Beach Post* and *Boca News Now* articles about the Association and this litigation.

A court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds. *Luce v. U.S.*, 469 U.S. 38, 41(1984). Motions *in limine* are generally disfavored as admissibility questions should be ruled upon as they arise at trial. *Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, 10-22153-CIV, 2013 WL 750309, at *1 (S.D. Fla. Feb. 27, 2013). As a result, if evidence is not clearly inadmissible, "evidentiary rulings must be deferred until trial to allow questions regarding foundation, relevancy, and prejudice." *Lordeus v. Torres*, 1:17-CV-20726-UU, 2018 WL 1364641, at *1 (S.D. Fla. Mar. 1, 2018) (quoting *Kobie v. Fifthian,* 2014 WL 1652421 at *1 (M.D. Fla. 2014)).

Motions *in limine* are "best limited to those issues that the mere mention of which would deprive a party of a fair trial. The Court does not issue advisory opinions, and it is difficult to rule in a vacuum without having the opportunity to see the proffered testimony in perspective with other evidence in the trial." *U.S. v. Everglades Coll., Inc.*, No. 12-60185-CIV, 2014 WL 11578214, at *1 (S.D. Fla. May 28, 2014); *Contreras v. Aventura Limousine & Transportation Serv., Inc.*, No. 13-22425-CIV, 2014 WL 11880996, at *2 (S.D. Fla. July 29, 2014) ("It is always difficult to rule in a vacuum, so the Court's ruling is without prejudice to Defendants' objecting when the evidence is sought to be introduced.").

With this case law in mind, the Court will address each point in turn.

**(1) The November 22, 2019 Tennis Court Incident and the Association's Handling of it**

Defendant seeks to exclude evidence and argument regarding the incident that occurred at the tennis court on November 22, 2019 and the Association's handling of it. Defendant points to the Court's Order Denying Defendant's Motion to Dismiss, which found that the allegations regarding this tennis court incident failed to state a cause of action under the Fair Housing Act "[g]iven that there exist no allegations pertaining to religion with respect to the LaGrassos' claim arising out of the tennis court incident and the Association's handling of same." [DE 55 at 9]. According to Defendant, based upon this ruling, all evidence relating to the tennis court incident must be excluded. Specifically, Defendant argues that such evidence is irrelevant and unfairly prejudicial to the Association "when the Court has already ruled the LaGrassos have not stated a cause of action concerning the Association's actions regarding the tennis court incident for religious discrimination and the jury has to rule on remaining causes of action against the Association."  [DE 116 at 4-5].  Defendant also argues that this evidence could mislead and confuse the jury because there is no cause of action for the tennis court incident.

Plaintiffs point out that, although the Court found that Plaintiffs did not state a cause of action under the Fair Housing Act based on the alleged misconduct on the tennis court, the Court never found that the tennis court incident is not relevant to Plaintiffs' overall disparate treatment claim. Plaintiffs' position is that they intend to rely on circumstantial evidence to support their claim and this evidence allows them to paint the full picture to the jury to establish discriminatory conduct. Specifically, the tennis court incident was the beginning of the conduct

3

that drove Defendant to treat Plaintiffs differently. As such, Plaintiffs contend that the tennis court incident is relevant to their case and should not be summarily excluded prior to trial.

The Court has not previously determined that evidence relating to the tennis court incident and the Association's handling of it is irrelevant to Plaintiffs' disparate treatment discrimination theory of Count I. The Court does not do so now. The Eleventh Circuit has made clear that a party is entitled to present a mosaic of circumstantial evidence to allow a jury to infer intentional discrimination. *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir.2011). Here, evidence relating to the tennis court incident and the Association's handling of it may very likely be relevant to Plaintiffs' establishment of discriminatory conduct depending upon the progression of the evidence and testimony at trial. The jury will have to consider the totality of the circumstances in this case and the jury should hear all of the relevant evidence related to Plaintiffs' disparate treatment theory. Any specific objections regarding the admission of testimony or other evidence relating to the tennis court incident and the Association's handling of it can only be fairly addressed during the crucible of trial on a proper and timely objection, and cannot be ruled upon in advance in a vacuum on a motion *in limine*. Therefore, the Motion is denied as to this issue.

**(2) Deborah LaGrasso's Facebook Posts and the Association's Actions Against Her**

Defendant seeks to exclude evidence and argument of Mrs. LaGrasso's Facebook posts and the Association's actions against her. Defendant again points to the Court's Order Denying Defendant's Motion to Dismiss, which found that Mrs. LaGrasso's posts on her "Bridges Seven" Facebook page and the Association's conduct of sending letters to Mrs. LaGrasso for the complaints did not amount to a right protected under the Fair Housing Act. [DE 55 at 14-15]. According to Defendant, based upon this ruling, all evidence and argument regarding the

4

"Association's actions against Deborah LaGrasso based on her Facebook posts on her Facebook page and any of the Association's sanctions related to same must be excluded a trial because Deborah LaGrasso's Facebook postings are not a protected right under the [Fair Housing Act.]" [DE 116 at 5-6]. Defendant argues that this evidence would be unfairly prejudicial to the Association and could mislead and confuse the jury.

Plaintiffs point out that the Order on the parties' supplemental briefing specifically identified these Facebook posts as part of the basis for Plaintiffs' disparate treatment claim and further argue that the Court ultimately ruled that circumstantial evidence like this should be presented to the jury because it may allow a jury to infer intentional discrimination. [DE 188]. Since the Facebook posts are, in Plaintiffs' view, unquestionably relevant to Plaintiffs' disparate treatment claim, Plaintiffs request that Defendant's Motion on this issue be denied.

In reply, Defendant argues that Mrs. LaGrasso's posts on Facebook, or posts and comments made by other community members or individuals who are not board members, are not conduct which is attributable to the Association. As such, evidence regarding non-board members' posts or comments made on Mrs. LaGrasso's Facebook page may prejudice the jury against the Association by misleading the jury to believe the Association was responsible for or took part in the posts.

As to comments or posts made by non-board members, Plaintiffs have not directly responded to this argument, specifically raised by Defendant in reply. The Court questions whether posts made by non-board members would be relevant at trial absent an additional and sufficient nexus to Defendant or some other legitimate basis establishing relevancy. However, the Court cannot decide that issue in a vacuum on a motion *in limine*. To avoid any unfair prejudice or confusion of the jury at trial, Plaintiffs shall not argue, mention, or present any

evidence or testimony regarding posts by non-board members at trial without first obtaining permission from the Court outside the presence of the jury. The Court will address this issue if timely raised by any party at trial.

As to Defendant's request for an *in limine* ruling to exclude Mrs. LaGrasso's posts on Facebook and the Association's actions against her, the motion *in limine* is denied. Such evidence appears to be relevant to establish discriminatory conduct and, as stated previously, Plaintiffs are entitled to present a mosaic of circumstantial evidence to allow a jury to infer intentional discrimination. *Smith*, 644 F.3d at 1328.  Because this evidence is not clearly inadmissible on all potential grounds, it shall not be excluded pretrial, and the Court will address any specific issues regarding such evidence at trial upon a proper and timely objection. *See Luce*, 469 U.S. at 41.

**(3) The Termination and Grounds Therefore of the Pro Shop Manager, Leah Nagel**

Defendant seeks to exclude any evidence and argument regarding the termination of the former Tennis Pro Shop Manager at the Association, Leah Nagel, and the grounds therefore. Ms. Nagel was working in the Tennis Pro Shop during the November 22, 2019 tennis incident. [DE 1]. Defendant argues that the termination of Ms. Nagel is wholly unrelated to the Plaintiffs or the alleged religious discrimination. Defendant's position is that Ms. Nagel is not a plaintiff and her termination does not have any tendency to prove or disprove religious discriminatory intent and/or animus against the Plaintiffs.

Plaintiffs argue against prematurely excluding evidence that may be used as circumstantial evidence in support of Plaintiffs' disparate treatment claim. Plaintiffs' position is that evidence such as the termination of Ms. Nagel is part of the circumstantial evidence to provide the jury with sufficient facts to infer intentional discrimination. Additionally, Plaintiffs

6

point out that Defendant does not yet know how Plaintiffs intend to present their case to the jury, and this type of objection should be raised at trial. Plaintiffs state that excluding relevant evidence because it makes Defendant look poorly to a jury is not proper grounds for a motion *in limine*.

The Court recognizes that any testimony or evidence as to the termination of Ms. Nagel has the potential of creating a mini trial within a trial. The Court will not allow this trial to address extraneous and attenuated evidence or testimony not relevant to the issues to be tried before the jury. However, at this juncture, the Court does not have sufficient information as to how Plaintiffs plan to present evidence of the termination of Ms. Nagel at trial to allow this Court to determine whether this evidence is relevant to Plaintiffs' pending claim against Defendant. Depending upon the manner in which the trial unfolds, such testimony may or may not be admissible. For instance, it is possible that Ms. Nagel is a witness to certain relevant facts at trial, and if so, her termination may or may not be admissible depending upon her testimony in conjunction with other relevant trial evidence and testimony. Simply stated, the Court cannot decide this issue on a pretrial motion *in limine*. Accordingly, the Motion is denied as to this issue. Plaintiffs are instructed that if they wish to introduce, mention, or argue such testimony or evidence at trial, Plaintiffs shall first seek leave of court outside the presence of the jury and the Court will then decide the issue during trial when more fully informed.

**(4) The September 6, 2019 Association Fining Schedule**

Defendant seeks to exclude evidence and argument regarding the September 6, 2019 Fining Schedule. Defendant contends the September 6, 2019 Fining Schedule was not the Association's fining schedule in place during the pertinent time frame of November 22, 2019 through July 3, 2020. Defendant argues that the admission of this evidence would mislead the

jury to incorrectly believe that the September 6, 2019 Fining Schedule was in effect when the Association made decisions concerning Mrs. LaGrasso and would unfairly prejudice the Association.

Plaintiffs argue that this evidence is very relevant to Plaintiffs' claims. Specifically, Plaintiffs will present evidence in support of its disparate treatment claims that no resident of the Seven Bridges community had ever had the fines and/or suspensions levied against them like the Plaintiffs had. This is, according to Plaintiffs, directly relevant to Plaintiffs' claims that they were treated differently on account of their religion. Plaintiffs' position is that excluding critical evidence such as this would severely prejudice Plaintiffs during trial.

The Court finds that evidence in support of Plaintiffs' disparate treatment claim that no resident of the community was fined or suspended in the same manner as Plaintiffs is likely relevant to this case. The September 6, 2019 Fining Schedule is not clearly inadmissible on all potential grounds, and the Court will rule on any specific objections on this point if timely raised at trial. Accordingly, the Motion is denied as to this issue. If such testimony or evidence is admitted, Defendant will have the opportunity at trial to present evidence that the September 6, 2019 Fining Schedule was not the schedule in effect when the Association made decisions concerning Mrs. LaGrasso. Therefore, the Motion on this issue is denied.

**(5) Alleged Fraud in the Association's December 2020 Board of Directors Elections**

Defendant seeks to exclude evidence or argument regarding alleged fraud in the Association's December 2020 Board of Directors elections, which occurred over four months after Mrs. LaGrasso's fining and second suspension by the Association on July 8, 2020 and after the instant Complaint was filed on July 16, 2020. Defendant argues that such evidence is not relevant because alleged fraud in a board election has no bearing or relationship to religion, to

the Plaintiffs, or to discrimination. Defendant argues that this evidence is prejudicial, has no probative value, and would not allow a jury to infer intentional religious discrimination by the Association against the Plaintiffs. Moreover, this evidence would mislead and confuse the jury when the election at issue took place months after the relevant time frame in the Complaint.

Plaintiffs' position is that evidence of fraud in the Association's December 2020 Board of Directors election provides circumstantial evidence of disparate treatment. Defendant notes that the Board of Directors in place during the relevant timeframe included an exclusively Jewish composition, and their actions against the Christian Plaintiffs is critical to Plaintiffs' case.

The Court doubts the relevancy of evidence relating to the alleged fraud in the Association's December 2020 Board of Directors elections.  This evidence seems too remote and attenuated unless, for example, a trial witness is alleged to have engaged in the fraud or unless the fraud was directly related to Plaintiffs. However, at this juncture, the Court does not have sufficient information as to how Plaintiffs plan to present this evidence at trial to determine whether this evidence is relevant to Plaintiffs' pending claim against Defendant. Accordingly, although the Court will not exclude this evidence pretrial on a motion *in limine*, Plaintiffs are instructed that if they wish to introduce, mention, or argue such evidence or testimony at trial, Plaintiffs shall first seek leave of court outside the presence of the jury. The Court will rule further on this point if timely raised at trial.  Further, to the extent Plaintiffs seek to introduce news articles about the alleged election fraud, the Court is not inclined to permit this type of evidence at trial, as typically news articles contain inadmissible hearsay and are otherwise inadmissible. Therefore, the same ruling applies to the news articles as applies to the claim of fraud discussed in this paragraph.

### (6) Audio or Video Evidence After July 8, 2020

Defendant seeks to exclude evidence and argument of audio or video recordings produced by the Plaintiffs after July 8, 2020. Defendant states that the Association took its final action against Mrs. LaGrasso on July 8, 2020, and on July 16, 2020 the LaGrasso filed the instant lawsuit. Defendant asserts that since the filing of the instant lawsuit, the LaGrassos, for the first time on January 11, 2021, provided the full recordings of seven audio and video recordings of: (a) nonboard member, Rachel Aboud Tannenholz, outside of the LaGrassos' home, (b) vehicles driving in front of the LaGrassos' home, and (c) a telephone conference between Mrs. LaGrasso and Ms. Tannenholz. Defendant argues the admission of this evidence would be misleading to the jury because the jury may believe that the Association was in possession of and viewed these audio and video files when making its decisions relating to sanctioning Mrs. LaGrasso. Defendant asserts that the Association only had in its possession for consideration the video provided for viewing on a cell phone at the February 2020 Compliance Committee hearing, an incomplete audio recording of Ms. Tannenholz on the LaGrassos' property, and a video of Ms. Tannenholz and her daughter on the LaGrassos' property, which is the evidence the Association used to make its decisions. Therefore, admission of these recordings results in unfair prejudice to the Association, and they should be excluded at trial.

Plaintiffs contend that these recordings are highly relevant to the proceedings and the date they were produced is irrelevant. Plaintiffs state that these recordings were inflammatory and religiously charged, and fully support Plaintiffs' claim that they were treated differently, at least in part, on account of religion. As such, Plaintiffs should be permitted to introduce this evidence to the jury.

The Court will address any objections to such evidence at trial. Mr. LaGrasso apparently advised in a letter that they had "video and audio recordings of Ms. Tannenholz engaging in repeated and protracted harassing and discriminatory conduct including trespassing upon our property, loitering and waiting outside of our home, shouting from the front yard, making anti-semitic statements and slanderous comments and stalking my wife both physically and online." [DE 178 at 4]. In addition, on June 8, 2020, Mr. LaGrasso forwarded a portion of the audio recording of Mrs. LaGrasso and Ms. Tannenholz's telephone conversation in which Ms. Tannenholz allegedly made the remarks about Plaintiffs moving out of the predominantly Jewish neighborhood because they did not belong and were hated there. *Id.* The videos may be relevant to support Plaintiffs' disparate treatment claims. If they are admitted, Defendant can provide testimony that will clarify what the Association viewed and what the Association did not view in response to the Plaintiffs' complaints. Moreover, the fact that the Association did not seek out the complete recordings may allow a jury to infer how the Association handled Plaintiffs' complaints, which is circumstantial evidence of discrimination. Accordingly, the Motion is denied as to this issue.

**(7) *Palm Beach Post* and *Boca News Now* Articles About the Association and This Litigation**

Defendant seeks to exclude evidence and argument of *Palm Beach Post* and *Boca News Now* articles about the Association and this litigation. Defendant contends that the instant lawsuit has been, and will likely continue to be, the subject of articles in the *Palm Beach Post* newspaper as well as the online news outlet *Boca News Now*. The *Boca News Now* articles also contain statements from prior co-defense counsel, partial citations to pleadings in the instant lawsuit and opinion of the author regarding issues in the instant lawsuit. Defendant argues that any and all

newspaper articles, online articles, or the like and all evidence regarding or relating to these articles should be excluded at trial because they are hearsay, would mislead to the jury, and would unfairly prejudice the Association. Plaintiffs agree that these articles should not come into evidence at trial.

The Court likewise agrees. As noted above, news articles typically contain inadmissible hearsay and other inadmissible comments or statements. Moreover, news articles about this litigation are not relevant to establish Plaintiffs' disparate treatment claim and would mislead to the jury. As such, evidence, argument, or comment related to any such news articles shall be excluded at trial, and the Motion is granted as to this issue.

**ORDERED and ADJUDGED** in chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of September 2021.

_____
William Matthewman
United States Magistrate Judge